## NEW ENGLAND FURNITURE & CARPET CO. v. UNITED STATES.

No. 2469.

District Court, D. Minnesota, Third Division.

Feb. 17, 1933.

Lewis L. Drill, U. S. Atty., of St. Paul, Minn., and M. W. Goldsworthy, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for the motion.

Stevens, Stevens & Maag and Llewellyn F. Wing, all of Minneapolis, Minn., opposed.

NORDBYE, District Judge.

■■ The complaint states a good cause of action if this court has jurisdiction of an equitable action of this character against the United States. The United States cannot be sued without its consent. This court did have jurisdiction of the original action at law in which a judgment of dismissal was entered on April 1, 1930. That suit was brought to recover income and excess profit taxes which the plaintiff contends it had erroneously paid under the internal revenue laws. The court had jurisdiction to enter the dismissal, and the judgment of dismissal entered thereafter became a final judgment. This court as a court at law lost jurisdiction to vacate or set aside the judgment because more than seven months had elapsed since the entry thereof before any application was made to vacate the judgment of dismissal. See 2 F. Supp. 648. No appeal was taken from that judgment within the statutory period. In another proceeding, New England Furniture & Carpet Co. v. Willcuts, 55 F.(2d) 983, this court determined that the ancient common-law remedy of coram nobis was not available to the plaintiff to set aside this judgment, though the court did intimate that plaintiff would have recourse to a court of equity. The statute of limitations has now run, and the prosecution of another action to recover these taxes is barred; and, consequently, unless the judgment of dismissal can be set aside and vacated, the right of plaintiff to recover the alleged overpayment of taxes has been lost. The setting aside of any judgment and the reinstatement of the action at law would therefore deprive the United States of a right with which it is now vested, viz., to forever bar the plaintiff from recovering this alleged overpayment of taxes. Manifestly, this court has no jurisdiction to disturb or deprive the United States of this vested right, unless the United States has expressly conferred such jurisdiction upon this court.

Plaintiff brings this action in equity. Paragraph 2 of the bill of complaint reads in part as follows: "That this is an action in equity, brought by the plaintiff against the defendant to restore to the plaintiff the right to prosecute and have determined an action at law commenced by the plaintiff in this court on March 30, 1927, for the recovery of income and excess profit taxes which the plaintiff erroneously paid to the defendant under the Internal Revenue Laws of the United States, and which action was dismissed by this court on April 1st, 1930."

■■ Any right of jurisdiction must be looked for in title 28, USCA § 41 (20), Judicial Code, § 24 (20). This section was recently construed in U. S. v. Turner, 47 F.(2d) 86, 88 (C. C. A. 8) decided January 28, 1931, in which the court quoted the following from the case of U. S. v. Jones, 131 U. S. 1, 9 S. Ct. 669, 33 L. Ed. 90: "We cannot yield to the suggestion that any broader jurisdiction as to subject-matter is given to the circuit and district courts than that which is given to the court of claims. It is clearly the same jurisdiction—'concurrent jurisdiction' only—within certain limits as to amount; and the language in which those limits are expressed furnishes an additional argument in favor of the conclusion which we have reached."

This court has been cited to no case which holds that any equity jurisdiction is vested in the District Courts in an action against the United States, except upon a claim against the United States for money. True, the ultimate purpose of this action is to vacate a judgment of dismissal and thus revive an action based upon a money demand; but, in attempting to reach that goal, the plaintiff is endeavoring, by the aid of the equity arm of this court, to divest the United States of a vested right. The following digest of the cases indicates a uniformity of opinion against plaintiff's contention.

In U. S. v. McLemore, 4 How. (45 U. S.) 286, 288, 11 L. Ed. 977, it appears that the United States recovered judgment against one Searcy, and a bill was filed by his surviving executor seeking to enjoin the enforcement of the judgment for the reason that payments had been made upon the judgment for which credit had not been given; that is, payments were made to different persons who succeeded each other in the office of District Attorney. The court in disposing of the matter used the following language: "There was

no jurisdiction of this case in the Circuit Court, as the government is not liable to be sued, except with its own consent, given by law." The bill was dismissed.

In Hill et al. v. U. S., 9 How. (50 U. S.) 386, 13 L. Ed. 185, a bill was filed on the equity side of the court by the complainants to enjoin a judgment obtained against the complainants by the United States. The court followed the case of U. S. v. McLemore, and dismissed the bill.

Kirk v. United States (C. C.) 131 F. 331, 339, was a suit for injunction to restrain and enjoin the United States and the United States marshal from seizing the property of the complainant pursuant to an execution in favor of the United States, issued out of the United States District Court. Apparently, the writ of execution was issued in a scire facias proceeding. The court found that the judgment was illegally obtained, and that there was no adequate remedy at law; but the court summarily dismissed as to the United States because "the United States cannot be sued by an individual except as permitted by acts of Congress"—citing U. S. v. McLemore, supra, and U. S. v. Hill, supra.

Buckley v. U. S. (D. C.) 196 F. 429, 431, was a bill in equity to enjoin an execution of a judgment at law. It appeared from the bill of complaint that in 1900 an action was commenced by the United States against certain defendants, including the complainant herein, to recover the sum of $22,344 for cutting and removing timber from certain public lands of the United States. Process was personally served upon complainant. It also appeared that in the same year the grand jury returned an indictment in the same court against the same defendants for the unlawful cutting of timber on public lands; and these two actions were pending on the 8th day of November, 1900, when the complainant entered into negotiations with the United States attorney for settlement or compromise of the claims against him. According to the complainant, it was his understanding that, upon payment of $600, all future proceeding against him would be discontinued. He paid the sum of $600, and it appears that this sum was credited as a fine imposed in the criminal case, and thereafter, on May 11, 1901, judgment was taken against the complainant by default in civil action for the full amount of the claim, together with costs and disbursements. Of this judgment the complainant had no notice until the 17th day of January, 1911, when he was confronted with a writ of execution in the hands of the United States marshal. In the court's opinion, the bill stated a good and meritorious defense, and set forth sufficient grounds for equitable relief, if the suit was one within the jurisdiction of the court. A demurrer was interposed on the ground that the court had no jurisdiction. The District Judge used this language: "The United States, by successive acts of Congress have consented to be sued upon their contracts either in the Court of Claims or in a Circuit or District Court of the United States. [Citing various statutes.] But I know of no act of Congress authorizing a suit of this kind against the government. On the contrary, in United States v. McLemore, 4 How. 286, 11 L. Ed. 977, a judgment of the Circuit Court enjoining the United States from proceeding upon a judgment was reversed and the bill dismissed for want of jurisdiction. In Hill v. United States et al., 9 How. 386, 13 L. Ed. 185, a similar ruling was made. In Kirk v. United States (C. C.) 131 F. 331, a suit was brought against the United States and the United States marshal to enjoin the execution of a judgment, but as to the United States the bill was dismissed, with costs, for want of jurisdiction. It therefore follows that as to the government the bill of complaint in this case must be dismissed with costs, and it is so ordered.".

Gherwal v. United States, 46 F. (2d) 998 (C. C. A. 9), was an appeal from an order made on the 23d day of April, 1930, dismissing appellant's bill in equity praying for a decree setting aside a certain other decree entered pro confesso on the 17th day of November, 1924, revoking and canceling an order made on the 19th day of January, 1922, which granted to appellant a certificate of naturalization. The motion to dismiss was granted upon the ground that the United States of America was made a party defendant in said suit, and there was no provision of law allowing or permitting the United States to be sued in this cause. The court stated: "The rule applied by the court below, to the effect that the United States cannot be made a party to any suit, action, or proceeding without express authority of Congress, is well settled and is decisive of this case"—citing cases. The lower court was sustained.

In U. S. v. Turner, supra, one Christina P. Turner filed a bill against the United States praying that her title to a tract of land in North Dakota be quieted as against any claims of the United States, and for an injunction against any disturbance of her title and possession, and for general relief. It appeared that she alleged ownership by purchase from one F. C. Turner, and she con-

tended that in a deed made to her by F. C. Turner an error was made in the description, so that the deed described another tract of land. Other allegations in the bill indicated that the United States had recovered a judgment against F. C. Turner, and had issued an execution under the judgment and levied on the same, and had sold the land. The District Court entered a decree quieting the plaintiff's title and granted the injunction prayed for. Subsequently, a motion was made to vacate the decree, which motion was overruled, and from that order the appeal was taken. The opinion was written by Judge Munger, who at some length discussed the jurisdiction of the District Court, and pointed out that the jurisdiction of this court was concurrent with the Court of Claims, and that the subsequent amendments had not given to the District Court any broader jurisdiction than that which is given to the Court of Claims. The court held in this case that Judicial Code, § 24 (20), 28 USCA § 41 (20), did not give jurisdiction to a District Court to enter a decree quieting title to lands, or to grant an injunction restraining the United States from trespassing upon lands in a suit brought against the government. The lower court was reversed.

Wood v. Phillips, 50 F.(2d) 714 (C. C. A. 4), was an action seeking to eject a forest supervisor of the United States from certain lands, and to enjoin him from claiming or exercising dominion over the same, and from interfering with the free and uninterrupted use thereof by the plaintiff. The court intimated that an ejectment would lie as against the forest supervisor, but in that the suit sought to quiet title, the matter in issue was the title itself and in that the United States did not consent to be sued, and could not be made a party defendant, plaintiff's suit to quiet title, therefore, would be nugatory.

Plaintiff cites two cases—O'Connor v. O'Connor (C. C.) 146 F. 994, and Brun v. Mann, 151 F. 145, 150, 12 L. R. A. (N. S.) 154 (C. C. A. 8)—which discuss the jurisdiction of the United States courts in equity actions which are brought to aid, regulate, restrain, or enforce a judgment entered in an action wherein the court was vested with jurisdiction. In O'Connor v. O'Connor, supra, there was a judgment of dismissal entered in a suit at law. A bill in equity was filed by the parties to the original suit at law to set aside a judgment of dismissal. The court cited the language used in Freeman v. Howe, 24 How. 450, 460, 16 L. Ed. 749, and quoted Justice Nelson as follows: "The principle is, that a bill filed on the equity side of the court to restrain or regulate judgments or suits at law in the same court, and thereby prevent injustice, or an inequitable advantage under mesne or final process, is not an original suit, but ancillary and dependent, supplementary merely to the original suit, out of which it had arisen, and is maintained without reference to the citizenship or residence of the parties"—citing cases.

That is, the court held that the suit on the equity side was merely ancillary to the action at law over which the court had jurisdiction and that service might be made upon the parties in the equity suit, even though they resided beyond the limits of the district, and on page 997 of 146 F., the Circuit Court stated: "The present bill, though an original bill in the chancery sense of the word, is a continuation of the former suit, on the question of the jurisdiction of the court"—citing cases.

In Brun v. Mann, supra, it appeared that a decree of the federal court had been allowed as the only claim against the estate of a deceased person in the county court of the state in which the administration was pending. The property of the estate consisted of certain lands and water rights appurtenant thereto. The statutes of the state imposed a duty upon the administratrix to sell unexempt real property to pay debts. The administratrix, however, claimed that the real estate was exempt, and refused to take any steps to sell the property. An action was commenced in the federal court in equity to render a decree for the sale of the land in the estate, notwithstanding the pendency of the administration in the county court. The question arose as to the jurisdiction of the federal court, and Judge Sanborn used the following language: "Nor was the right of the complainant to invoke this jurisdiction conditioned by the existence of a federal question or of diversity of citizenship or of the amount in controversy. A bill in equity dependent upon a former action of which the federal court had jurisdiction may be maintained in the absence of either of these attributes (1) to aid, enjoin, or regulate the original suit; (2) to restrain, avoid, explain, or enforce the judgment or decree therein; or (3) to enforce or obtain an adjudication of liens upon, or claims to property in the custody of the court in the original suit. Such a dependent suit is but a continuation in a court of equity of the original suit, to the end that more complete justice may be done"—citing cases.

Obviously, the court in these cases did not have reference to the limitation placed on

District Courts in an action against the United States. The only reference to jurisdiction was to the amount in controversy and diversity of citizenship. The District Court has equity as well as law jurisdiction over private persons where other jurisdictional facts are present. In the cases cited by the plaintiff, the jurisdiction of the District Court is not extended into a field where equity jurisdiction of the parties did not exist. The court simply recognized the right, as well as the necessity, of reserving jurisdiction over the original parties wherever they might reside so far as it became necessary in the furtherance of justice to continue proceedings in equity with reference to the judgment or suit over which the court had obtained jurisdiction. The inherent right, however, of this court to continue supplementary actions with reference to suits and judgments over which it had jurisdiction must necessarily be limited, so far as the United States is concerned, by the permissive acts of Congress in vesting jurisdiction in this court over the United States. Without a special pronouncement of Congress indicating intention to extend jurisdiction of the United States courts in an action of this kind, this court would not feel justified in accepting O'Connor v. O'Connor, supra, and Brun v. Mann, supra, as any authority for such extension.

The court is well aware of the peculiar and unusual circumstances which brought about the dismissal, and the excusable neglect which caused the plaintiff to permit the dismissal to ripen into a final judgment. The court feels, however, that it has no alternative but to sustain the government's contention, and is therefore constrained to grant the motion to dismiss.

It is so ordered.